IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DEEPAK MALIK,<br><br>　　　　Petitioner,<br><br>　　vs.<br><br>SHIKHA DOSANJ, in her official capacity as Warden of the Federal Detention Center, Honolulu, Hawaiʻi, *et al.*,<br><br>　　　　Respondents. | Civil No. 26-00060 MWJS-WRP<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

**INTRODUCTION**

Petitioner Deepak Malik is a citizen of India, but for humanitarian reasons, he cannot be returned there. Because Malik has been ordered removed from the United States, the government is looking for a third country that will accept him. But while the government searches, Malik sits in immigration detention. That detention has now lasted nearly ten months.

Against this backdrop, Malik petitions for a writ of habeas corpus, contending that his immigration detention has become unlawfully prolonged. He notes that under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), detention beyond six months to effectuate removal is presumptively unreasonable. And he argues that the government has not overcome that presumption.

The court agrees that, on the record presented here, Malik's detention has become impermissibly prolonged. It therefore GRANTS the petition.

## BACKGROUND

Malik first entered the United States in 2019 seeking asylum, but his request was denied; a final order of removal was entered in September 2019, and he was removed to India in December 2019. Dkt. No. 13-2, at PageID.100. Malik represents that he was imprisoned and tortured upon his return to India, and in March 2023, he fled India and reentered the United States. Dkt. No. 1, at PageID.2.

Shortly after his reentry, Malik was arrested by the U.S. Border Patrol, and he was served with notice of the government's intent to reinstate the September 2019 removal order. Dkt. No. 13-4, at PageID.106. But Malik was not removed; instead, after four days in custody, he was released. *Id.* For the next two years, Malik "resided in California with his sponsor, formed deep community relationships, [and] cooperated with authorities." Dkt. No. 1, at PageID.4.

All of that ended on May 13, 2025, when "Immigration and Customs Enforcement arrested" Malik "at his scheduled check-in appointment in Fresno, California." Dkt. No. 13-4, at PageID.106. He has been in immigration detention since then—a time period that now amounts to nearly ten months.

On the same day as his May 2025 arrest and detention, Malik was once again served with notice of the government's intent to reinstate the September 2019 removal

2

order.  *Id.*; *see also* Dkt. No. 13-2.  At that time, an immigration official—identified as an "authorized deciding official"—signed a "Decision, Order, and Officer's Certification" that Malik was "subject to removal through reinstatement of the prior order."  Dkt. No. 13-2, at PageID.100.  Although the government does not concede that this order effectuated the reinstatement of the September 2019 removal order, it has not offered any evidence of reinstatement having been delayed to any later date.  Nor has it offered any other document or order reflecting reinstatement at a later date.

Based on his stated fears of returning to India, Malik was "referred to U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear interview."  Dkt. No. 13-4, at PageID.106.  On June 12, 2025, USCIS concluded that Malik's fear of returning to India was not reasonable.  *Id.*  But Malik asked for an immigration judge to review that decision, Dkt. No. 13-3, at PageID.102-03, and on October 1, 2025, an immigration judge granted Malik the relief of "Withholding of Removal under Immigration and Nationality Act § 241(b)(3)."  Dkt. No. 1-2, at PageID.54.  The immigration judge's decision was not appealed and became final on October 31, 2025.  Dkt. No. 13-4, at PageID.107.  As a result, although Malik remains subject to a final order of removal, he cannot be removed to India.

Malik was eventually transferred to the Federal Detention Center in Honolulu (the "FDC"), and on February 9, 2026, Malik petitioned for a writ of habeas corpus.  He principally contends in his petition that his detention has become unlawfully prolonged

3

under the Supreme Court's decision in *Zadvydas*. The petition names as respondents the Warden of the FDC, Shikha Dosanj, as well as three other federal officials. Dkt. No. 1, at PageID.1. After the petition was served, the parties agreed to allow the government until February 24, 2026, to respond, Dkt. No. 11, and the government timely filed its response, Dkt. No. 13. Malik timely filed a reply on March 3, 2026. Dkt. No. 15. The court then heard arguments from counsel at a hearing held on March 4, 2026. Dkt. No. 16.

## DISCUSSION

This court may exercise habeas jurisdiction to assess the legality of their detention under "the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), and that jurisdiction is available to citizen and noncitizen alike. Malik is in custody at the FDC and he argues that his prolonged detention violates federal law. Given these circumstances, the court unquestionably has jurisdiction over his petition. *See Zadvydas*, 533 U.S. at 688; *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021).

And so we turn to the merits of Malik's petition. Because he has been arrested to effectuate an order of removal, a 90-day "removal period" applies, under which Malik may lawfully be detained. 8 U.S.C. §§ 1231(a)(1) and (a)(2). That period may be extended beyond the 90 days under 8 U.S.C. § 1231(a)(6), and the language of the provision places no express limit on the length of further extensions. But in *Zadvydas*,

the Supreme Court rejected the notion that § 1231(a)(6) allows "indefinite detention." 533 U.S. at 689. Instead, adopting a limiting construction, the Court held that § 1231(a)(6) allows detention of a noncitizen currently in the United States only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id*. It follows that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The *Zadvydas* Court also provided guidance on how to apply this limiting construction of the statute. A detention period of six months after a removal order is to be treated as "presumptively reasonable." *Id.* at 701. On the other side of six months, however, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the government "must respond with evidence sufficient to rebut that showing." *Id.* The court must evaluate each party's burden flexibly and with sensitivity to the individualized circumstances of a case. This means that, on the one hand, the noncitizen need not show "that deportation will prove 'impossible'"; that is, he does not have to establish "the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702 (citation omitted). It also means that, on the other hand, the government might still meet its burden of rebuttal even if there is no "'extant or pending' repatriation agreement," as the court must also consider "the likelihood of successful future negotiations." *Id.* (citation omitted).

5

In this case, Malik contends that he has been in immigration detention for nearly ten months, and so under *Zadvydas*, his continued detention is presumptively unreasonable. The government counters that only about four of those months truly count. In support of its reframing of the duration of Malik's detention, the government offers three separate arguments.

First, the government suggests—with support from the declaration of an immigration officer—that Malik was not "ordered removed to the Republic of India" until October 1, 2025, and that the order of removal became final on October 31, 2025. Dkt. No. 13-4, at PageID.106-07. Based on that assertion, the government argues that only four months have passed since the removal order was entered against Malik. Although the court has no occasion to question the credibility of the officer who submitted the declaration—it accepts that the officer provided his truthful understanding of the record—the court nonetheless concludes that the record as a whole does not support the governments' argument. As a document attached to the government's response demonstrates, Malik was not given a chance to reopen the September 2019 removal order; instead, he was "placed in 'withholding-only' proceedings." Dkt. No. 13-3, at PageID.102. That is to say, Malik was only allowed to argue that the order of removal should be withheld vis-à-vis India. *Accord Guzman Chavez*, 594 U.S. at 531 (explaining that "withholding-only proceedings" are "limited to a determination of whether the alien is eligible for withholding or deferral of removal,

and as such, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief" (cleaned up)). And so when the immigration judge issued his order on October 1, 2025, he only entered the relief of "Withholding of Removal." Dkt. No. 1-2, at PageID.54. There is no indication that the immigration judge also entered an order of removal at that time.

Instead, the record supports the conclusion that a removal order was not entered at the late date of October 2025, but rather was reinstated at an earlier date no later than May 2025, around the time of Malik's second arrest. In May 2025, an agent signed a "Decision, Order, and Officer's Certification" that Malik was "subject to removal through reinstatement of the prior order." Dkt. No. 13-2, at PageID.100. Although the government does not concede that this decision and order effectuated the reinstatement of the September 2019 removal order, it certainly appears to have done so. As the Supreme Court explained in *Guzman Chavez*, "when an alien reenters the country after having already been removed, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 594 U.S. at 533 (cleaned up). Accordingly, reinstatement of a removal order is a streamlined process, requiring only that the government "(1) obtain the prior order related to the alien, (2) confirm that the alien under consideration is the same alien who was previously removed or voluntarily departed, and (3) confirm that the alien unlawfully reentered the United States."

7

*Veltmann-Barragan v. Holder*, 717 F.3d 1086, 1088 (9th Cir. 2013) (cleaned up).  The officer then must "provide the alien with written notice of his or her determination, and advise the alien that he or she may make a written or oral statement contesting the determination."  *Id.* (cleaned up).  Those steps all appear to have been satisfied by May 2025—as reflected in the officer's May 2025 decision and order—and the government offers no reason to conclude otherwise.  The best interpretation of the record, therefore, is that Malik has been in custody for nearly ten months under a final order of removal (since May 2025), rather than merely four (since late October 2025).

      The government's second argument for its preferred measurement of detention time—which government counsel advanced at the hearing on the petition—is that if May 2025 were treated as the starting point for the removal period for *Zadvydas* purposes, it would unfairly prejudice the government because withholding of removal was not resolved until October 2025, and the government would not have removed Malik before the withholding-only proceedings were completed.  The government therefore urges the court to treat the September 2019 order as having been reinstated only when the withholding of removal relief was granted in October 2025.  That is a fair argument, and the dissenting justices in *Guzman Chavez* made a variation of it, *see* 594 U.S. at 548-58 (Breyer, J., dissenting), but the Court's majority reached a different conclusion.  In the view of the majority, "removal orders and withholding-only proceedings address two distinct questions," and because "they end in two separate

8

orders," the "finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." *Id.* at 539. Indeed, the Court's majority observed that the order of removal logically precedes any withholding of removal: "it is axiomatic that in order to withhold removal there must *first* be an order of removal that can be withheld." *Id.* at 540 (cleaned up; emphasis in original). Given the clear holding and reasoning of the Court's majority in *Guzman Chavez*, the court cannot accept the government's argument here.

    Nor can the court accept the government's third argument for its preferred measure of time. In the government's view, immigration officials could conceivably have believed that Malik would simply be removed to India—and so they would not truly have begun looking in earnest for a third country until the immigration judge granted withholding of removal in October 2025. But the only reason Malik was granted a reasonable fear hearing here is because, at the outset, he had expressed a fear of returning to India. *Accord Guzman Chavez*, 594 U.S. at 531 (explaining that "because an alien subject to a reinstated order of removal will not have any removal proceedings, the process begins for him only if he expresses a fear to DHS of returning to the country of removal"). That expressed fear proved strong enough to persuade an immigration judge. And while it is possible that immigration authorities arrested and detained Malik, were aware of the real possibility that he could not be returned to India, and nonetheless chose to sit on their hands until they were definitively told as much, the

9

government has offered no evidence to support the conclusion that that is in fact what happened here. The court is not inclined to simply assume—without an evidentiary basis—that immigration authorities actually held such a lackadaisical attitude toward the duration of a noncitizen's immigration detention.

Having rejected the government's arguments for interpreting Malik's removal-related detention as amounting to no more than four months, the court must treat it as instead being more than six months—indeed, as approaching ten months. With that starting point, the duration of his detention is presumptively unreasonable, and Malik need only offer a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. He has met this burden. There is no dispute that Malik has no connection to any third country other than India. Nor is there any dispute that the government has yet to identify any third country that would accept him. And Malik notes that even if the government were able to identify a third country, it would take time to work through his procedural rights—including his right to challenge the propriety of any such third country. The government, to its credit, acknowledges as much. Dkt. No. 13-4, at PageID.107 ("DHS fully understands that prior to any removal to an alternate country other than the Republic of India, Petitioner must be provided notice, an opportunity to claim fear, and if a fear is claimed, an opportunity to have that claim adjudicated."). All of this is

enough to show at least a good reason to believe that the government is not significantly likely to remove him in the reasonably foreseeable future.

The government therefore bears the burden of rebutting the presumption that Malik's detention has become unreasonably prolonged. To do so, its evidence must show a "significant likelihood of removal" to a third country "in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The government has not made that showing. It offers only an immigration officer's assurance that immigration officials are "actively working with the Department of State to identify a third country of removal for Petitioner." Dkt. No. 13-4, at PageID.107. But while it is possible that these efforts were eventually bear fruit—indeed, it is even possible these efforts will bear fruit soon—they do not show a "significant likelihood" of bearing fruit in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. To be sure, the court must consider the likelihood that these "future negotiations" will prove "successful." *Id.* at 702. But here, the government has not offered any evidence supporting the conclusion they will be, let alone that they have a good chance of wrapping up reasonably soon.

In short, Malik has met his burden and the government has not offered sufficient rebuttal evidence. It follows that Malik's continued detention is unlawful under § 1231(a)(6) and the court must grant Malik's habeas petition and order his immediate release. But the court does so with two qualifications. First, in addition to arguing that his continued detention is unlawful under § 1231(a)(6), Malik makes other arguments in

11

support of his petition. *See* Dkt. No. 1, at PageID.35-37 (raising additional claims under the Administrative Procedure Act and the Constitution). Because they are not sufficiently fleshed out in his briefing, the court declines to resolve those other arguments. Second, because the court agrees that there is no reason to apply this order to any respondent other than the warden of the FDC—at the least, Malik has not offered any argument to the contrary—it GRANTS Respondents' motion "to strike and to dismiss all respondents other than Shikha Dosanj from this case." Dkt. No. 13, at PageID.85 n.1.

## **CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is GRANTED. The court ORDERS Respondent Shikha Dosanj, the Warden of the FDC, to immediately release Malik from detention under the conditions in his preexisting order of supervision. The parties are ORDERED to file a joint status report by March 10, 2026, confirming that Malik has been released. And any fee petition must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (explaining that the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

//

//

IT IS SO ORDERED.

DATED: March 6, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 26-00060 MWJS-WRP; *Deepak Malik v. Shikha Dosanj,* et al.; ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS